# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

| | | |
|---|---|---|
| NELSON IRIZARRY | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:24-cv-00160-RWS |
| | § | |
| TEXAS A&M UNIVERSITY - | § | |
| TEXARKANA, | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

NOW COMES Nelson Irizarry, Plaintiff in the above-styled and numbered cause, and files this Second Amended Complaint against Defendant Texas A&M - Texarkana. Plaintiff would respectfully show the Court the following:

## I.  THE PARTIES

1.1     Plaintiff Nelson Irizarry ("Plaintiff" or "Irizarry") is an individual residing in Nevada County, Arkansas.

1.2     Defendant Texas A&M - Texarkana ("Defendant" or "TAMUT") is an arm or instrumentality of the State of Texas and is a public university organized under the laws of the State of Texas. TAMUT has appeared through counsel in this lawsuit and is being served with this amended complaint by ECF service on its attorney in charge, John Ramsey, of the Office of the Attorney General of Texas.

## II.  JURISDICTION AND VENUE

2.1     This Court has jurisdiction over this action under 28 U.S.C. § 1331 because one or more of Plaintiff's causes of action is created by federal law, specifically Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*

2.2     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as all or part of Plaintiff's claims accrued in Bowie County, Texas, which is within this district and division.

## III.  FACTUAL BACKGROUND

3.1     Plaintiff is an Instructor of Mechanical Engineering at TAMUT. Irizarry began working for TAMUT in 2020, after a long and successful career in the Army, wherein he achieved the rank of Colonel with a specialty in Military Intelligence. Irizarry's military work took him all over the world. In particular, he spent a great deal of time in the Middle East, completing two combat tours in Iraq and eventually providing intelligence support in Saudi Arabia, Qatar, and Kuwait, as well as supporting intelligence operations from Germany for Iraq, Syria, and Afghanistan. While Irizarry earned many honors and recognitions for his service from all branches of the military and from many allied countries, his service ultimately left him 100% disabled, having suffered injuries to both shoulders, knees, an ankle, and his lower back, among other ailments.

3.2     After a 33-year career with the Army, Irizarry retired from uniformed service in October of 2019 with an Honorable Discharge. In addition to his status as a disabled veteran with extensive service in the Middle East, Irizarry is originally from Puerto Rico, Catholic, and Hispanic. In January 2020, Irizarry obtained a part-time teaching job as an adjunct instructor at Southern Arkansas University before beginning a new full-time career in academia at TAMUT in July of 2020.

### INITIAL HIRING BY TAMUT

3.3     Beginning in the Fall semester of 2020, TAMUT appointed Irizarry as a tenure-track Assistant Professor of Mechanical Engineering in its College of Business, Technology, and

Engineering ("CBTE"). However, upon his arrival at TAMUT, Irizarry quickly became the victim of repeated discrimination and retaliatory behavior by his colleagues and Department Chair, all of whom were practicing Muslims from countries in the Middle East. Irizarry asserts that this discrimination took place on the basis of his national origin, as he is the only native U.S. Citizen within the department of engineering.

3.4     For example, in September 2022, the Department Chair, Dr. Mohammed Morsy ("Chair Morsy"), who is from the Middle East, had filled the Mechanical Engineering Program Coordinator position with another individual from the Middle East, Dr. Md. Nizam Uddin ("Uddin"). Dr. Uddin was a junior faculty member without administrative experience. In justifying his hiring of Uddin, Chair Morsy gave credit to Uddin for accomplishments other Mechanical Engineering faculty, including Plaintiff, had actually achieved. Additionally, unlike Plaintiff who had many years of experience in federal, state, and private practice, and was the only Professional Licensed Engineer in the department, Uddin had no experience in management of organizations or in public or private practice as an engineer. Plaintiff would later learn that Uddin was also given more favorable advantages, in the form of being provided extra equipment funding and lab technician support repeatedly denied to Plaintiff.

3.5     Plaintiff does not sue here for these events of discrimination, which happened prior to the retaliatory and discriminatory treatment of 2024. He makes these allegations, instead, to show the discriminatory climate in his department, which he complained about at the time. On January 17, 2023, Plaintiff filed a formal charge of discrimination with EEOC, asserting that TAMUT had violated Title VII and the ADEA. EEOC issued a right to sue letter on January 27, 2023, but Plaintiff chose not to sue TAMUT at that time.

3.6     In his appointment letter, Plaintiff was informed that his pre-tenure review would take place during the 2023-2024 academic year, and that he would be eligible to apply for tenure and promotion during the 2025-2026 academic year. Plaintiff was contacted by Provost Arnold in April of 2023, three months after he had brought his EEOC charge, instructing him to have a meeting with Dean Choudhary, for both his annual performance evaluation and his pre-tenure review. This meeting took place on May 1, 2023.

3.7     Following the meeting, Dean Choudhary wrote negative comments in Plaintiff's evaluations. On May 25, 2023, Plaintiff emailed the new Dean of the College of Business, Engineering, and Technology, Dr. Sushil Sharma ("Dean Sharma"), regarding the negative comments and stated that he would not be signing the evaluation as he felt Dean Choudhary was making the comments out of retribution, but by the end of the semester Dean Choudhary resigned.

3.8     Although Plaintiff was told by a faculty colleague that he would need to submit a portfolio by September of 2023 for his Pre-Tenure review, Plaintiff, thinking that his Pre-Tenure review would be part of his annual evaluation set to take place in April or May of 2024, did not submit the portfolio. At the time, TAMUT was notorious for revising its practices regarding dates for annual review, but never put those revisions into policy. Soon after the September deadline passed, Provost Arnold presented Plaintiff a declaration that he did not meet the requirements to move forward on the tenure-track because he did not submit his portfolio. The deadline for submission was never clear to Plaintiff.

3.9     Plaintiff was called into a meeting on or about October 9, 2023, with Provost Arnold and Dean Sharma. At that meeting, Plaintiff was told he had not submitted his portfolio for his Pre-Tenure review and therefore would not be permitted to continue on a tenure-track career

path. They also informed him he was being stripped of his title of Assistant Professor. Provost Arnold instead offered that Plaintiff could continue as either a full-time, non-tenure track Instructor, or as an adjunct instructor (non-tenure track, part-time).

3.10    During that meeting, Plaintiff informed Provost Arnold and Dean Sharma that although he had missed the deadline to submit his Pre-Tenure review portfolio, he was already owed an additional year to apply because of a one-year extension given to all faculty due to COVID-19. When he brought this fact up, the Provost and Dean told Plaintiff that the opportunity for the one-year extension had passed—although no date of expiration had ever been presented. Plaintiff made it clear during the meeting that he wished to remain tenure-track in pursuit of attaining tenure in the future. At the conclusion of the meeting, Provost Arnold turned to Plaintiff and said, "I could have changed your salary, *but I am not going to.*"

3.11    On November 17, 2023, Plaintiff received a letter of appointment, signed by Provost Arnold, declaring he was being appointed as a non-tenure-track Instructor for the upcoming Spring, 2024 semester, beginning in January 2024. As promised by Provost Arnold in the October 9, 2023, meeting, Plaintiff's 9-month salary remained at $95,172 (prorated). However, in March of 2024, Plaintiff received an email from Dean Sharma stating that while Provost Arnold had kept his salary at $95,000, it would be reduced to $70,000 for the 2024-2025 academic year. Plaintiff did not respond to that email.

**INITIAL CONTRACT FOR 2024-2025, FOLLOWED BY REDUCTION IN SALARY**

3.12    On or about May 16, 2024, Plaintiff received a new 9-month contract for the 2024-2025 academic year. The contract, dated May 13, 2024, was already signed by Provost Arnold. Later that day, Plaintiff received a letter of appointment from Provost Arnold indicating that his new contract had been recommended by Dean Sharma. Despite Dean Sharma's previous March

2024 email indicating otherwise, Plaintiff's contract indicated his 9-month salary for the 2024-2025 academic year would be $95,172, in accordance with the Provost's comments in December, "I could have changed your salary, *but I am not going to*." Plaintiff signed the contract and submitted it the same day, promptly receiving a receipt from the university verifying submission of the signed contract.

3.13    On or about August 14, 2024, all faculty at TAMUT received notice from Provost Arnold that the contract start date indicated in their May 2024 signed contracts was in error, and that some of the faculty would be receiving new contracts with a start date of August 16, 2024. Plaintiff received no new contract prior to the start of the Fall 2024 semester, and TAMUT paid him at the end of August in accordance with the $95,172 salary set forth in his May 2024 contract.

3.14    Plaintiff had already been teaching for multiple weeks during the Fall 2024 term and had been paid pursuant to the contract he and the Provost signed in May of 2024, when he received a "new contract" on September 16, 2024. In the new contract, it did not simply have a corrected start date but indicated that Plaintiff's salary for the 2024-2025 academic year would be $70,000, instead of the $95,172 he had agreed to when he signed the contract the Provost sent him in May. TAMUT also reduced its and Plaintiff's contribution to his 401K retirement account. On September 19, 2024, the university processed the reduction in salary. Plaintiff received a DocuSign request to sign his contract on September 23, 2024. Plaintiff did not sign the new $70,000 contract.

3.15    Because Plaintiff had already been paid for the month of August 2024 based on his original May 2024 signed contract, the university deducted an extra $1,600 from his already-reduced October 2024 paycheck, as reimbursement to itself for the "extra" pay Plaintiff received when he was paid in August 2024 based on his original May 2024 contract.

**THE REDUCTION IN DR. IRIZARRY'S PAY WAS DISCRIMINATORY**

3.16    Plaintiff asserts that this reduction in salary and corresponding deduction were discriminatory actions taken against him on the basis of his national origin, religion, race, or ethnicity. Plaintiff is the only native U.S. citizen within the engineering department, and the only faculty member who received this significant reduction in salary. Plaintiff maintains that he is uniquely qualified in his position as a licensed civil engineer, with a PhD, and yet he is being disproportionately underpaid on the basis of his national origin, religion, race or ethnicity. Further, in discussing Plaintiff's adverse employment actions he was given repeated assurances that his salary would not be reduced. Despite this, even after certain adverse actions had already been taken against Plaintiff, he suffered the additional and separate action of his salary reduction.

3.17    Salaries within CBTE are established by the Provost at the recommendation of Dean Sharma. The change in status from a tenure-track assistant professor to a lecturer or instructor does not require a pay cut, and certainly not one as drastic as Plaintiff received. Plaintiff's lowered salary is significantly less than that of his colleagues, none of whom are native U.S. citizens. As a lecturer in the department of engineering, Plaintiff received a monthly salary of $8,167 in 2024. As stated above, Plaintiff is highly qualified as a PhD and licensed civil engineer (the only licensed engineer in the engineering department). Conversely, Plaintiff's colleague, Professor Ren, originally from China, received a monthly salary of $9,006 in 2024 as a lecturer in computer science. Professor Ren is less qualified than Plaintiff as she only has a master's degree, rather than a PhD. Yet, Plaintiff received approximately $9,000 less in annual pay than his colleague.

3.18    Both the department of engineering and the department of computer science are within CBTE and under Dean Sharma. The computer science faculty is not, at the assistant professor level, paid more than engineering faculty. On the contrary, Professor Pashsah, an

assistant professor of engineering, received a monthly salary of $10,334 in 2024. Similarly, Professor Znidi, another assistant professor of engineering, received a $10,263 monthly salary in the same year. These professors received significantly higher pay than their colleagues who were assistant professors of computer science. Professor Guo, an assistant professor of computer science, received $9,100 as a monthly salary in 2024 while another assistant professor of computer science, Professor Jung, received $9,633. Across the assistant professors, it appears that the professors of engineering were paid a significantly higher rate than those in computer science. And yet, as a lecturer of engineering, Plaintiff received less pay than a lesser qualified lecturer of computer science.

3.19    This reduction can be attributed to the discrimination on part of Defendant, paying Plaintiff a lesser salary, despite his qualifications, as he is the only native U.S. citizen within the engineering department, the only Hispanic or Puerto Rican faculty, and the only Catholic. Plaintiff's colleagues, department chair, and dean are all practicing Muslims from countries in the Middle East.

3.20    Defendant took these discriminatory actions against Plaintiff based on his national origin, in violation of Title VII. Additionally, and/or in the alternative, these actions were discriminatory and based on his religion, ethnicity, and/or race, in violation of Title VII.

## IV. <u>CAUSE OF ACTION</u>

4.1    All allegations set forth above in the Factual Background section of this Second Amended Complaint are hereby referenced and fully incorporated in the claim below by this specific reference, as though set forth in full.

**Discrimination on the bases of religion, national origin, race, color, and ethnicity Under Title VII.**

4.2	Title VII prohibits discrimination based on race, color, sex, religion, ethnicity, and national origin. *See* 42 U.S.C. §2000e-2(a)(1). Specifically, Title VII prohibits discrimination based on those characteristics "with respect to [an employee's] compensation, terms, conditions, or privileges of employment."

4.3	On or about October 9, 2024, after the reduction in his salary, Plaintiff signed and submitted an EEOC charge against Defendant for (1) discrimination under Title VII on the bases of religion, race, color, ethnicity, and national origin, and for (2) retaliation. His charge was assigned EEOC Number 450-2025-00303.

4.4	On October 15, 2024, Plaintiff received a letter from the EEOC notifying him of his right to sue within ninety days on his claims under Title VII. Irizarry timely brought this lawsuit within ninety days of his receipt of the right to sue letter.

4.5	As set forth above, Defendant TAMUT, through the Provost, Dean, Department Chair, and departmental faculty, has discriminated against Plaintiff based on his national origin (an American citizen from Puerto Rico), his Hispanic and Puerto Rican ethnicity, his race, and his (Catholic) religion. In his department of Mechanical Engineering, all full-time faculty colleagues in that department, including Chair Morsy, were from the Middle East, were not citizens of the United States, and were practicing Muslims. For the other faculty, their courses are scheduled around their religious-based need to pick up their children from school, as their wives do not drive. For Professor Irizarry, he is assigned the time slots, early and late, that his Muslim colleagues are permitted to opt out of. Plaintiff does not sue for discrimination based on these disadvantageous class assignments, but merely asserts them as further factual basis for his allegations of disparate treatment as a non-Muslim.

4.6     Incorporating all allegations set forth in Section III of this Complaint, Defendant has, through its employees, discriminated (and/or retaliated) against Plaintiff in his compensation by changing his salary mid-semester, including taking back income he had already been paid. This has caused damage to Plaintiff, including $25,000 in salary for the 2024-2025 academic year, a similar amount for the 2025-2026 year, as well as physical pain and mental or emotional damages, including exacerbation of his existing disabilities and mental anguish, for all of which, having exhausted his administrative remedies, he now sues.

## V.  <u>REQUESTED RELIEF</u>

5.1     As the direct and/or proximate result of TAMUT's actions complained of herein, Plaintiff has been damaged and seeks recovery of the full measure of relief and damages against TAMUT to which he is entitled, including but not limited to actual and/or economic damages, back pay, front pay, damages for mental anguish and emotional distress, nominal damages, if applicable, equitable relief restoring his salary, and compensatory damages.

## VI.  <u>FEES, COSTS, AND INTEREST</u>

6.1     Plaintiff has retained the law firm of Hill Gilstrap, P.C. to represent him in connection with this matter, and has agreed to pay the law firm its reasonable and necessary attorneys' fees and costs in connection with such representation. Without waiving and/or limiting any other relief requested, Plaintiff seeks to recover his reasonable and necessary attorneys' fees and costs incurred and to be incurred in bringing this suit and in all appeals of this suit, as permitted by law or in equity, specifically including 42 U.S.C. § 2000e-5(k).

6.2     Plaintiff is also entitled to and seeks to recover costs of court, expert witness fees, along with pre-judgment and post-judgment interest at the maximum rate permitted by law.

## VII.  CONDITIONS PRECEDENT

7.1    All conditions precedent to the Plaintiff's recovery on the claims alleged herein have been performed or have occurred.

## VIII.  DEMAND FOR JURY TRIAL

8.1    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a jury trial and has tendered, or will tender, the requisite fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that upon final hearing, Plaintiff recovers judgment against Defendant and be awarded:

(a)    any and all amounts recoverable and/or recognizable as damages under law and/or in equity, resulting and/or occasioned by the wrongful acts and/or conduct of Defendant (as set forth above more specifically), including both actual and nominal damages;

(b)    his litigation expenses and costs, including but not limited to attorneys' fees and costs and any applicable expert fees;

(c)    costs of court, pre-judgment and post-judgment interest, at the maximum rate as allowed by law; and

(d)    such other and further relief, both general and special, at law or in equity, to which he may be justly entitled.

Respectfully submitted,

*/s/ Frank Hill*
Frank Hill – SBN 09632000
fhill@hillgilstrap.com
Stefanie Klein – SBN 11565650
sklein@hillgilstrap.com
HILL GILSTRAP, P.C.
1400 W. Abram St.
Arlington, Texas 76013
(817) 261-2222
(817) 861-4685 FAX
**ATTORNEYS FOR PLAINTIFF**
**NELSON IRIZARRY**

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this document has been served upon all parties and counsel via the Court's electronic filing system on October 21, 2025.

/s/ Stefanie Klein
Stefanie Klein