IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| NELSON IRIZARRY,<br>*Plaintiff,*<br><br>v.<br><br>TEXAS A&M UNIVERSITY<br>TEXARKANA<br>*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.<br>5:24-CV-00160-RWS<br><br>JURY TRIAL DEMANDED |

## DEFENDANT TEXAS A&M TEXARKANA'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant Texas A&M University Texarkana ("TAMUT" or "Defendant") files its Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint (Dkt. 37).

### GENERAL DENIAL

Pursuant to Federal Rule of Civil Procedure 8(b), and for the express purpose of requiring Plaintiff to meet his burden of proof herein, Defendant denies each and every allegation contained in the Second Amended Complaint except for those expressly admitted herein. The headings and paragraphs below directly correlate to the sections and numbered paragraphs of Plaintiff's Second Amended Complaint. Section headings are reproduced in this Answer for organizational purposes only, and Defendant does not admit any matter contained therein.

### I. THE PARTIES

1.1     Admit that the Plaintiff in this action is Nelson Irizarry. Admit Plaintiff resides in Arkansas, but Defendant is without knowledge or information sufficient to form a belief at this time whether Plaintiff resides in Nevada County, Arkansas.

1.2     Admit the allegations in this paragraph.

## II.    JURISDICTION AND VENUE

2.1    Admit the Court has jurisdiction over actions under 28 U.S.C. § 1331 and further admit that Plaintiff is invoking the federal jurisdiction of the Court by bringing claims under Title VII of the Civil Rights of 1964 , 42 U.S.C. §, 2000e *et seq.* ("Title VII"). However, Defendant denies that Plaintiff is entitled to any relief whatsoever under Title VII.

2.2    Admit that venue is proper in this district pursuant to 28 U.S.C. § 1391(b). Deny that TAMUT committed any unlawful employment practices alleged to have accrued in Bowie County, Texas.

## III.    FACTUAL BACKGROUND

3.1    Admit Plaintiff is an Instructor of Mechanical Engineering at TAMUT. Admit Plaintiff began working for TAMUT in 2020 after he previously served in the Army. Defendant is without knowledge or information sufficient at this time to form a belief regarding the remainder of this paragraph including information about Plaintiff's career in the Army, the rank he achieved, where he was stationed,  his role was in the Army, honors and recognitions he may have received, and whether Plaintiff's service in the Army left him 100% disabled, and if so, what injuries he may have suffered.

3.2    Defendant is without knowledge or information sufficient at this time to form a belief about the length of Plaintiff's career in the Army and the circumstances of Plaintiff's discharge. Defendant admits Plaintiff is a veteran and admit Plaintiff identified himself as a disabled veteran in his application to TAMUT. Admit that Plaintiff is Hispanic but is without knowledge or information sufficient at this time to form a belief about whether Plaintiff is originally from Puerto Rico or is Catholic. Admit that Plaintiff became a full-time employee at TAMUT in July 2020 but Defendant is without knowledge or information sufficient at this time at to whether Plaintiff held a part-time adjunct instructor position at Southern Arkansas University in January 2020.

**INITIAL HIRING BY TAMUT**

3.3     Admit Plaintiff was appointed in the Fall semester of 2020 as a tenure-track Assistant Professor of Mechanical Engineering in TAMUT's College of Business, Engineering, and Technology ("CBET").[1] Admit that Plaintiff's Department Chair is from the Middle East and is Muslim but deny that all of Plaintiff's colleagues were practicing Muslims from countries in the Middle East. Deny that Plaintiff is the only native U.S. Citizen within the department of engineering. The remaining allegations in this paragraph set forth legal conclusions to which no response is required. To the extent a response is required, Defendant denies the remaining allegations in this paragraph and specifically denies that Plaintiff was the victim of repeated discrimination and retaliatory behavior upon his arrival at TAMUT and denies Plaintiff was discriminated against on the basis of Plaintiff's national origin.

3.4     Admit Dr. Morsy was the Department Chair in September 2022, that Dr. Morsy is from the Middle East, and that Dr. Morsy filled the Mechanical Engineering Program Coordinator Position with Dr. Uddin in September 2022. Defendant denies that Dr. Uddin is from the Middle East. Defendant is without knowledge or information sufficient at this time to form a belief about Plaintiff's characterization that Dr. Uddin was "a junior faculty member without administrative experience," but admits that Dr. Uddin became a tenure-track Assistant Professor of Mechanical Engineering at TAMUT in 2021. Admit that Dr. Morsy justified his hiring of Dr. Uddin because he had relevant experience for the position but deny that Dr. Morsy gave credit to Dr. Uddin for accomplishments other Mechanical Engineering Faculty, including Plaintiff, achieved. Defendant is without knowledge or information sufficient at this time to form a belief as to whether Plaintiff was the only Professional Licensed Engineer in the department but admits that Plaintiff is a Professional

---

[1] Plaintiff's Second Amended Complaint incorrectly refers to the CBET as the College of Business, Technology, and Engineering ("CBTE"), in which case Defendant denies Plaintiff was a tenure-track Assistant Professor of Mechanical Engineering in the CBTE.

Licensed Engineer and that Plaintiff had prior experience outside of academia. Defendant is without knowledge or information sufficient at this time to form a belief about whether Dr. Uddin had prior experience in management of organizations or in public or private practice as an engineer. Defendant denies that being a Professional Licensed Engineer, working as an engineer, or "experience in management of organizations" were requirements for the Mechanical Engineering Program Coordinator Position in September 2022. Deny that Dr. Uddin was given "more favorable advantages," that Dr. Uddin was provided extra equipment funding, and that Plaintiff was "repeatedly denied" lab technician support.

3.5     Plaintiff's assertion that alleged events of discrimination occurred prior to 2024 is a legal conclusion and requires no response. To the extent a response is required, Defendant denies same. Defendant is without knowledge or information sufficient at this time to form a belief about Plaintiff's intent to include allegations he contends "show the discriminatory climate in his department," but otherwise denies Plaintiff's allegation of retaliatory and discriminatory treatment in 2024 and denies there was a discriminatory climate in Plaintiff's department. These are also legal conclusions. Admit Plaintiff filed a charge of discrimination with the EEOC asserting violations of Title VII and the ADEA on January 17, 2023, that the EEOC issued a right to sue letter on January 27, 2023, and that Plaintiff did not file a lawsuit within 90 days of the right to sue, but Defendant is without knowledge or information sufficient at this time to form a belief as to whether Plaintiff "chose not to sue TAMUT at that time."

**REMOVAL FROM TENURE-TRACK**

3.6     Admit Plaintiff's appointment letter informed Plaintiff that his pre-tenure review would take place during the 2023-2024 academic year, and he would be eligible to apply for tenure and promotion in the 2025-2026 academic year. Admit Provost Arnold sent Plaintiff a memorandum regarding pre-tenure review on April 21, 2023, recommending Plaintiff schedule an appointment with

Dean Choudhary to discuss the pre-tenure review process fully and to answer any questions Plaintiff may have. To the extent this paragraph alleges any causal connection or relationship between Provost Arnold's April 2023 memorandum regarding Plaintiff's pre-tenure review and Plaintiff's January EEOC charge, Defendant denies. Admit Dean Choudhary and Dr. Morsy conducted Plaintiff's performance review for the 2022-2023 academic year, but Defendant is without knowledge or information sufficient at this time to form a belief as to whether this meeting took place on May 1, 2023.

3.7 Admit Dean Choudhary conducted Plaintiff's performance review. Defendant is without knowledge or information sufficient at this time to form a belief as to what Plaintiff characterizes as "negative comments," but admits that Dean Choudhary recommended Plaintiff conduct research and publish peer-reviewed articles relating to Plaintiff's designated field of mechanical engineering, encouraged Plaintiff to make efforts towards improved communications with his mechanical engineering colleagues, and noted Plaintiff's unprofessional manner of expressing his concerns during the annual evaluation meeting. Admit Plaintiff emailed Dean Sharma regarding Dean Choudhary's performance evaluation, stating that he felt Dean Choudhary was making her evaluation out of "retribution." Admit Plaintiff did not sign his performance evaluation. Admit Dean Choudhary resigned from TAMUT in May 2023.

3.8 Defendant is without knowledge or information sufficient at this time to form a belief as to whether a "faculty colleague" told Plaintiff that he would need to submit a portfolio by September 2023 for his pre-tenure review or why Plaintiff did not submit his portfolio. Admit that Plaintiff did not submit his portfolio by September 2023 for his pre-tenure review. Deny that TAMUT was "notorious for revising its practices regarding dates for annual review, but never put those revisions into policy." Admit Provost Arnold informed Plaintiff he could not move forward as tenure-track faculty because he did not submit his portfolio. Deny that the deadline for submission of the

required portfolio for pre-tenure review was "never clear to Plaintiff."

3.9     Admit the allegations in this paragraph.

3.10     Admit Plaintiff acknowledged he missed the deadline to submit his pre-tenure review portfolio but deny that Plaintiff was owed an additional year to apply or that he informed Provost Arnold and Dean Sharma of such during this meeting. Deny that Plaintiff "made it clear during the meeting that he wished to remain tenure-track in pursuit of attaining tenure in the future." Admit Provost Arnold told Plaintiff she would allow him to maintain his Assistant Professor salary for the remainder of the 2023-2024 academic year despite his transition to a non-tenure track Instructor. Admit that Provost Arnold could have changed Plaintiff's salary because he was no longer a tenure-track Assistant Professor but deny as written that Provost Arnold stated she was never going to change Plaintiff's salary or that Plaintiff would be permitted to maintain his tenure-track salary past the 2023-2024 academic year. Admit that Plaintiff's salary remained at $95,172 (prorated) for the 2023-2024 academic year. Defendant denies the remaining allegations in this paragraph.

3.11     Deny that Provost Arnold "promised" Plaintiff his salary would remain at $95,172 following the conclusion of the 2023-2024 academic year. Admit the remaining allegations in this paragraph.

**INITIAL CONTRACT FOR 2024-2025, FOLLOWED BY REDUCTION IN SALARY**

3.12     Admit Plaintiff was issued a signed appointment letter from Provost Arnold for the 2024-2025 academic year on May 13, 2024, listing a $95,172 salary, but deny this was "in accordance with the Provost's comments in December, 'I could have changed your salary, but I am not going to'" or that this was done "[d]espite Dean Sharma's previous March 2023 email indicating otherwise." Admit Plaintiff signed the appointment letter and submitted it on May 16, 2024. Defendant is without knowledge or information sufficient at this time to form a belief as to Plaintiff "promptly receiving a receipt from the university verifying submission of the signed contract."

3.13    Deny TAMUT paid Plaintiff at the end of August in accordance with the $95,172 salary set forth in his May 2024 contract. Defendant admits the remaining allegations in this paragraph.

3.14    Admit Plaintiff received a revised contract on September 16, 2024 for the 2024-2025 academic year reflecting the $70,000 salary Plaintiff was to receive for the 2024-2025 academic year in accordance with his change in title from a tenure-track Assistant Professor to a non-tenure track Instructor of Mechanical Engineering and reflecting the correct start date of August 16, 2024 for the 2024-2025 academic year. Admit Plaintiff had been teaching during the Fall 2024 term when the revised appointment letter was issued on September 16, 2024 but deny that Plaintiff had been paid "pursuant to the May 2024 contract." Defendant admits the remaining allegations in this paragraph.

3.15    Deny that Plaintiff had been paid for the month of August 2024 based on his May 2024 contract or that TAMUT deducted an extra $1,600 from his October paycheck. Admit that Plaintiff's October 2024 paycheck reflected his $70,000 nine month salary.

**THE REDUCTION IN DR. IRIZARRY'S PAY WAS DISCRIMINATORY**

3.16    This paragraph sets forth legal conclusions to which no response is required. To the extent a response is required, Defendant admits Plaintiff's salary was reduced but denies that it was reduced on the basis of Plaintiff's national origin, religion, race, ethnicity, or for any discriminatory reason. Defendant admits Provost Arnold informed Plaintiff she would allow him to maintain his tenure-track assistant professor salary for the remainder of the 2023-2024 academic year despite his transition to a non-tenure track Instructor but denies Plaintiff was "given repeated assurances that his salary would not be reduced." Defendant denies the remaining allegations in this paragraph.

3.17    Defendant admits salaries within the CBET are established by the provost and that it is not uncommon for appointment letters from the provost to include language such as "at the recommendation of the Dean" or for a Dean to recommend a specific salary but denies as written that "[s]alaries within CB[E][T] are…at the recommendation of Dean Sharma." Deny the change in

status from a tenure-track assistant professor to a lecturer or instructor does not require a pay cut. Deny that Plaintiff received a "drastic" pay cut. Deny that Plaintiff's salary is "significantly less than that of his colleagues" and deny that none of Plaintiff's colleagues are not native U.S. citizens. Defendant is without knowledge or information sufficient at this time to form a belief as to whether Professor Ren is originally from China. Admit Professor Ren was a lecturer of computer science in 2024 but deny Professor Ren received a monthly salary of $9,006. Admit Professor Ren has a master's degree but deny that Professor Ren is "less qualified" than Plaintiff. Deny that Plaintiff received approximately $9,000 less in annual pay than Professor Ren.

3.18    Admit the engineering and computer science departments are within CBET and admit that Dr. Sharma is currently serving as the Dean of CBET. Defendant is without knowledge or information sufficient at this time to form a belief regarding Plaintiff's allegation that the "computer science faculty is not, at the assistant professor level, paid more than engineering faculty." Deny Professor Pashsah received a monthly salary of $10,334 in 2024. Deny Professor Znidi received a monthly salary of $10,263 in 2024. Defendant is without knowledge or information sufficient at this time to form a belief regarding Plaintiff's allegation that these professors "received significantly higher pay than their colleagues who were assistant professors of computer science." Deny Professor Guo received a monthly salary of $9,100 in 2024. Deny Professor Jung received a monthly salary of $9,633 in 2024. Deny Plaintiff's allegation that "it appears that the professors of engineering were paid a significantly higher rate than those in computer science." Deny that Plaintiff "received less pay than a lesser qualified lecturer of computer science."

3.19    This paragraph sets forth legal conclusions to which no response is required. To the extent a response is required, Defendant admits Plaintiff's salary was reduced but denies that it was reduced on the basis of Plaintiff's national origin, religion, race, ethnicity, or for any discriminatory reason "despite his qualifications." Deny the remaining allegations in this paragraph.

3.20    This paragraph sets forth legal conclusions to which no response is required. To the extent a response is required, Defendant denies that it took any discriminatory actions against Plaintiff based on his national origin, religion, race, ethnicity and denies that it took any actions whatsoever in violation of Title VII.

## IV.    CAUSES OF ACTION

4.1    This paragraph simply realleges and reincorporates prior paragraphs, to which no response is required. To the extent a response is required, Defendant denies the allegations.

4.2    This paragraph is a legal conclusion simply, to which no response is required. To the extent a response is required, Defendant admits Title VII prohibits discrimination based on race, color, sex, religion, ethnicity, and national origin and prohibits discrimination based on those characteristics with respect to an employee's compensation, terms, conditions, or privileges of employment. Deny that TAMUT has discriminated against Plaintiff on the basis of his race, color, sex, religion, ethnicity, or national origin with respect to his compensation, terms, conditions, or privileges of employment.

4.3    Admit the allegations in this paragraph.

4.4    Defendant is without information or knowledge sufficient at this time to form a belief as to when Plaintiff received the notice of right to sue letter from the EEOC but admits that a lawsuit is brought timely if filed within ninety days of receipt of the right to sue letter.

4.5    This paragraph sets forth legal conclusions to which no response is required. To the extent a response is required, Defendant specifically denies that TAMUT, through any of its employees, has discriminated against Plaintiff based on his national origin, ethnicity, race, or religion. Admit that Chair Morsy is from the Middle East and is a practicing Muslim but otherwise deny that "all full-time faculty colleagues in [the department of Mechanical Engineering] were from the Middle East, were not citizens of the United States, and were practicing Muslims." Defendant is without information or knowledge sufficient at this time to form a belief as to Plaintiff's allegation that "other

faculty" have their courses "scheduled around their religious-based need to pick up their children from school, as their wives do not drive," but admit that TAMUT is required to accommodate religious belief under Title VII. Defendant is without information or knowledge sufficient at this time to form a belief as to Plaintiff's allegation he is "assigned the time slots, early and late, that his Muslim colleagues are permitted to opt out of." Defendant is without information or knowledge sufficient at this time to form a belief as to why Plaintiff has included the allegations in this paragraph and, to the extent a response is required, deny Plaintiff's legal conclusion that TAMUT has treated Plaintiff disparately because he is a non-Muslim, or for any discriminatory reason.

4.6     A portion of this paragraph simply realleges and reincorporates prior paragraphs, to which no response is required. To the extent a response is required, Defendant denies the allegations. This paragraph further sets forth legal conclusions to which no response is required. To the extent a response is required, Defendant specifically denies that it has discriminated and/or retaliated against Plaintiff in his compensation by changing his salary mid-semester. Defendant denies taking back income Plaintiff had already been paid. Defendant is without knowledge or information sufficient at this time to form a belief as to Plaintiff's alleged "physical pain and mental or emotion damages, including exacerbation of his existing disabilities and mental anguish," but denies that any of Plaintiff's alleged damages, including economic damages, were caused by Defendant. Defendant admits that Plaintiff's salary was reduced by $25,000 but denies that Plaintiff's salary was reduced for discriminatory reasons. Defendant admits that Plaintiff filed this lawsuit after exhausting his administrative remedies with respect to his October 9, 2024 EEOC charge alleging Title VII violations pertaining to the $25,000 reduction of his salary.

## V.     REQUESTED RELIEF

5.1     Defendant denies that it discriminated against Plaintiff. Defendant denies that Plaintiff is entitled to any relief whatsoever, including without limitation to actual and/or economic damages,

back pay, front pay, damages for mental anguish and emotional distress, nominal damages, equitable relief restoring his salary, and compensatory damages.

## VI.    FEES, COST, AND INTEREST

6.1    Defendant admits that Plaintiff retained the law firm of Hill Gilstrap, P.C. to represent him in this lawsuit, but is without knowledge or information sufficient at this time to form a belief as to Plaintiff's agreement to pay his attorneys. Defendant denies that Plaintiff is entitled to recover any attorneys' fees or costs.

6.2    Defendant denies that Plaintiff is entitled to recover costs of court and expert witness fees, along with pre-judgment and post-judgment interest at the maximum rate permitted by law.

## VII.    CONDITIONS PRECEDENT

7.1    Defendant is without knowledge or information sufficient at this time to form a belief as to whether "[a]ll conditions precedent to the Plaintiff's recovery on the claims alleged herein have been performed or have occurred."

## VIII.    DEMAND FOR JURY TRIAL

8.1    This paragraph states a jury demand, and as such, requires no response.

## PRAYER

Defendant denies that Plaintiff is entitled to any relief whatsoever, without limitation to economic damages, compensatory damages, equitable relief, attorney's fees, expert fees, costs, or any other type of legal or equitable relief. Defendant further denies any wrongful act or conduct. Defendant prays that Plaintiff take nothing from this suit and instead the Court award Defendant all relief allowed by law and equity, including awarding costs associated with defending this suit.

## AFFIRMATIVE DEFENSES

1.    Defendant had legitimate, non-discriminatory business reasons for all actions affecting Plaintiff that he contends was unlawful. Plaintiff further cannot show the required "but for" causation.

2. Defendant's actions relevant to this suit were done in good faith and without malice, willfulness, or intent. Any challenged action taken against Plaintiff was reasonably necessary to business or governmental operations. Defendant is entitled to the benefit and protection of the "business-judgment defense."

3. Defendant asserts the affirmative defense of sovereign immunity or Eleventh Amendment immunity as to Plaintiff's claims and requests for damages for which there has been no statutory or express waiver.

4. Defendant asserts that Plaintiff's claims are subject to all applicable statutory limitations, including the exemption of the government, government agency, or political subdivision from punitive damages.

5. Defendant asserts that Plaintiff's claims are barred to the extent he failed to exhaust his administrative remedies and thus failed to meet all conditions precedent and statutory prerequisites. Plaintiff's claims are barred, in whole or in part, to the extent such claims exceed the scope of or are inconsistent with his Charge of Discrimination filed with the EEOC.

6. Defendant asserts Plaintiff's claims are barred to the extent he relies upon any acts, events, allegations, or claims that fall outside the applicable statute of limitations period and or the 300-day period prior to his charge. Any claims not raised in Plaintiff's Charge of Discrimination should be barred and dismissed for failure to exhaust administrative remedies.

7. Defendant asserts that its decisions and actions regarding Plaintiff were wholly appropriate and the same decisions and actions would have been taken regardless of any allegedly discriminatory motives.

8. Defendant asserts that Plaintiff's own acts and/or omissions caused or contributed to Plaintiff's injuries, if any. Plaintiff's alleged losses and damages, if any, are the result of, and directly related to, Plaintiff's own conduct, actions and/or failure to act, and not of Defendant's conduct,

actions or failure to act. Plaintiff's own acts or omissions were the sole proximate cause or a proximate cause of his damages, if any.

9. Defendant asserts the defense of after-acquired evidence.

10. Plaintiff has failed to mitigate his damages, if any. Plaintiff's alleged losses and damages, if any, are the result of, and directly related to, Plaintiff's own conduct, actions and/or failure to act, and not of Defendant's conduct, actions or failure to act. Plaintiff's own acts or omissions were the sole proximate cause or a proximate cause of his damages, if any.

11. Defendant asserts Plaintiff's damages are limited to the extent there are any statutory caps on damages.

12. Defendant reserves the right to amend or supplement these affirmative defenses as this case proceeds through discovery.

Respectfully submitted,

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

**JOHN RAMSEY**
Texas State Bar No. 24051227
Deputy Chief, General Litigation Division
Lead Counsel
john.ramsey@oag.texas.gov

/s/ *Marlayna M. Ellis*
**MARLAYNA M. ELLIS**
Texas Bar No. 24123448
Assistant Attorney General
marlayna.ellis@oag.texas.gov

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: (737) 230-9640 | Fax: (512) 320-0667
*Counsel for Defendant Texas A&M University Texarkana*

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2026, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ *Marlayna M. Ellis*
**MARLAYNA M. ELLIS**
Assistant Attorney General
